**In re William R. PICH, Debtor.**

No. 00–20262.

United States Bankruptcy Court, D. Idaho.

Aug. 7, 2000.

William R. Pich, Coeur d'Alene, Idaho, pro se.

R. Wayne Sweney, Lukins & Annis, P.S., Couer d'Alene, Idaho, for Wells Fargo Bank NA, Creditor.

C. Barry Zimmerman, Couer d'Alene, Idaho, Trustee.

## MEMORANDUM OF DECISION ON HOMESTEAD

TERRY MYERS, Bankruptcy Judge.

### BACKGROUND

William R. Pich ("Debtor") filed this chapter 13 case not long after the Court

dismissed his prior chapter 13 proceeding, Case No. 99–21386 (the "first case"). The Court determined that Debtor was not eligible for chapter 13 relief in the first case because the proposed plan was funded entirely by sale of Debtor's real estate assets, and there was no proof that Debtor had sufficiently regular income to supplement the proceeds of such a sale over the required term of the plan. *See* § 109(e), § 101(30); *In re Lindsey*, 183 B.R. 624, 626–27, 95 I.B.C.R. 142, 144 (Bankr.D.Idaho 1995).

In the present case, Debtor has filed a proposed chapter 13 plan which again contemplates sale of his real estate, but also provides for plan payments from income received for consulting services Debtor performs.[1]

In addition to selling his real property as part of the plan, Debtor seeks to avoid certain judgment liens of Wells Fargo Bank ("Bank"), Citibank (South Dakota) NA, and Fender & Fender against that property under § 522(f)(1)(A) on the basis that they impair his homestead exemption.[2]

The Bank has objected to the plan, moved the Court to modify the stay to allow foreclosure of its claims against the real property, objected to sale of that real property, and objected to Debtor's claimed homestead exemption.[3]

As a result of the most recent of several hearings in this matter, the Court has taken under advisement the question of the validity of Debtor's claim of a homestead exemption in the real property and Bank's objection thereto, and the question of the avoidance of the Bank's judgment lien under § 522(f)(1)(A).[4] Resolution of the homestead exemption in particular is critical to several of the other matters, such as sale of the property, stay lift, and plan confirmation.[5]

Upon the record presented, and after consideration of the legal arguments advanced, the Court concludes that Debtor's claim of a homestead exemption under Idaho law would be valid but for the application of the principle of judicial estoppel. The Bank's objection to the exemption will be sustained. By virtue of this determination, Debtor lacks the ability to avoid the Bank's judgment lien as impairing the exemption. The following constitutes the Court's findings and conclusions upon these contested matters.

## FACTS

The evidence before the Court on the issue of the homestead exemption consists of all testimony and documentary evidence introduced at hearings in the first case, as well as certain additional testimony of Debtor elicited by the Bank at the July 18 hearing in the present case. That evidence establishes the following.

Debtor's real property consists of roughly 5 acres and is located at 4401 West Seltice Way in Couer d'Alene, Idaho (the "Property"). The Property contains a

---

1. The most recent version of the plan also proposes to supplement payments with income generated from use of a Kenworth truck.

2. Lien avoidance issues relate not just to Debtor's desire to free up value for his exemption. The existence of the liens, particularly the Bank's, is material to the ability of Debtor to sell the property under § 363(f) over the secured creditors' objections.

3. The Bank's objection to the homestead exemption was litigated in the first case, but a decision was not rendered due to the dismissal of the case on eligibility grounds. The parties have agreed and the Court has ordered that all evidence submitted on that issue in the first case will be considered in this case.

4. The Bank has a consensual secured claim in first position on the subject property, as well as a judgment lien standing in third position. Though Debtor disputes the amount of the first position debt the Bank claims under § 506(b), he does not dispute the validity of the claims or their priority.

5. The validity of the homestead is also material to the § 522(f) motions Debtor brings against Citibank and Fender & Fender, which are set for hearing on August 8.

building of approximately 9,744 square feet in size originally constructed to house operations of Debtor's now defunct business, P.I.C. Industries Incorporated.

The Property was originally zoned by Kootenai County as "commercial." When Debtor designed and constructed the building, he sought and obtained in 1991 a reclassification of the site's zoning from "commercial" to "light industrial." *See* Exhibit 6. The requested reclassification was granted by the Kootenai County Commissioners. *See* Exhibits 7, 8. While this change facilitated his construction of the building and planned business operations, residential uses are prohibited within the light industrial classification though they are not so prohibited in the commercial classification. *See* Kootenai County Zoning Ordinance, Exhibit 9, at §§ 9.03, 10.05.

During this process of reclassification, and during the construction of the building, Debtor lived in Moscow. Though he intended to reside in the building upon its completion, he did not disclose this intent to the Kootenai County zoning authorities. Debtors' application for approval of rezoning did not expressly comment on the question of residency, though his submission of the request for a light industrial classification necessarily and inherently represented that no residency was contemplated, as none would be proper within that zone.[6]

Despite the absence of zoning authorization for occupancy of the Property as a residence, Debtor relocated his residence to the Property upon completion of the building.[7] It has been Debtor's principal, and apparently only, residence for the nine

years immediately preceding the filing of bankruptcy.

While utilities and most bills regarding the Property were billed as "commercial" accounts or on commercial terms during this time, it does not appear that Debtor affirmatively attempted to conceal the fact that he lived on the Property.

There has not been any enforcement by the County of the zoning regulations restricting residential use of the Property.

## DISPOSITION

A number of discrete issues are raised regarding Debtor's claim of a homestead exemption in the Property. The Bank objects to that exemption arguing (i) that the structure where Debtor resided at filing does not qualify under the statute as a dwelling house; (ii) that Debtor resided there in violation of local zoning ordinances, and that this violation precludes Debtor from claiming a valid homestead exemption; and (iii) that by virtue of application of the principle of judicial estoppel, Debtor should be prohibited from claiming the exemption.[8]

### a. Homestead exemptions generally

█ Idaho debtors are allowed to claim state statutory exemptions, including the homestead exemption. *In re Koopal,* 226 B.R. 888, 890, 98.4 I.B.C.R. 98, 99 (Bankr.D.Idaho 1998); *In re Millsap,* 122 B.R. 577, 579, 91 I.B.C.R. 5, 7 (Bankr.D.Idaho 1991). *See also,* § 522(b); Idaho Code §§ 11–609, 55–1001 through 1011. Idaho Code § 55–1001(2) provides:

"Homestead" means and consists of the dwelling house or the mobile home in which the owner resides or intends to

---

6. In the Zone Change Application, Exhibit 6, Debtor referred to the need to change the classification so as to allow manufacturing to occur on site, since that use was prohibited in a commercial zone. This evidences his awareness of the requirements and restrictions of the ordinance.

7. The structure is designed and was completed as general office and manufacturing space.

In the upstairs office area, there is a small kitchen. There is a private 3/4 bath in the largest of the offices. Debtor put a bed and television in one of the offices. Laundry appliances were also installed.

8. This last issue was raised for the first time by a reference in the Bank's briefing on July 14, and discussed more thoroughly in its memorandum of July 18.

reside, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved; or unimproved land owned with the intention of placing a house or mobile home thereon and residing thereon.... Property included in the homestead must be actually intended or used as a principal home for the owner.

When these conditions are met, the Idaho Code provides for a $50,000.00 automatic exemption. See, §§ 55–1003 and 55–1004. The exemption is "automatic" in that the debtor need not file of record a "declaration" of homestead in order to gain the benefit of the statute. § 55–1004.

■ The homestead exemption statutes are to be liberally construed in favor of the debtor. *Koopal*, at 99; *In re Olsen*, 93 I.B.C.R. 130, 131 (Bankr.D.Idaho 1993); *In re Peters*, 168 B.R. 710, 711, 94 I.B.C.R. 44 (Bankr.D.Idaho 1994); *Millsap*, 122 B.R. at 579, 91 I.B.C.R. at 7.

**b. "Dwelling house"**

■ Debtor's choice of abode is unusual, but residing in a structure that also houses a business does not necessarily mean the exemption is lost. For example, this Court has previously construed the homestead statutes as providing a valid exemption on a duplex where the debtor lived in one-half and rented the other half as a means of generating income. *See, In re Hamilton*, 96.2 I.B.C.R. 70 (Bankr.D.Idaho 1996).

Of course, a duplex is not a structure far removed from a single-family "dwelling house." But other, more non-traditional residences have received the benefit of the homestead exemption as well.

For example, *Kiesel v. Clemens*, 6 Idaho 444, 56 P. 84 (1899) held valid a homestead claimed in a hotel which the debtor used as a residence as well as operated as a business:

The only question presented by this record for our consideration is: Was the property described in the declaration of homestead, at the time the same was made and recorded, subject to be declared upon as a homestead, under the statutes of Idaho? The district court held that, by reason of said premises being occupied by defendant and his family as an hotel at the time the declaration of homestead was filed, the same was not subject to homestead declaration, and the declaration filed thereon was void and of no effect to exempt said premises from levy and sale on execution. With this conclusion of the district court we cannot agree. The character of the occupancy, or use of the premises claimed as a homestead, so long as the same is occupied by the declarant as a residence and home for himself and his family, is immaterial, under the statutes of this state. The only limitations prescribed by the statutes of this state to the acquisition of homestead rights are residence and value. There is no distinction in our statutes, as there is in many of the states, between real estate located in a town, city, or village, and land used and occupied as a farm. There is no limitation in our statutes upon the amount of land that may be included in a homestead; so long as it is occupied as a residence, and does not exceed in value the limitations prescribed by the statute. If other limitations are deemed requisite, they must be fixed by the legislature, and not by the courts. The declaration of homestead in this case fully complies with the requirements of the statute. A liberal construction as to occupancy of homestead seems to be the rule recognized in most of the states, even where the restrictions are far less latitudinous than they are in this state.

*Id.*, 56 P. at 84. While the statutes have changed over the following century, neither these changes or the developed case law weakens the analysis of *Kiesel*.

■ The Court cannot ascribe the weight to the statute's use of the term "dwelling house" that the Bank would pre-

fer. If a debtor has an interest in the real property and actually occupies it as a residence, the other use(s) made of the property are immaterial.[9] The limitations of Idaho law regarding the need for an ownership interest in the property, actual residence, and on the value of the exemption serve as the basic protections against abuse.

### c. Zoning violation

■ The second question is whether the Debtor's violation of local ordinance through his occupancy of the Property as a residence should operate to invalidate or bar the homestead. The Bank has offered no direct authority to support its argument that a violation of zoning ordinance precludes Debtor from claiming a valid homestead exemption.[10]

There is no dispute that Debtor's occupation of the Property does, in fact, violate local law. That violation exposes Debtor to possible penalty. *See* Kootenai County Zoning Ordinance, Exhibit 9, at § 28.05 (providing for misdemeanor criminal prosecution and/or civil injunction.)

■ Nevertheless, as of the date of the filing of the petition for relief, which is the critical date for purposes of evaluating Debtor's entitlement to exemption, no such enforcement action, civil or criminal, had been commenced. Debtor has not been enjoined or prohibited from occupying the

Property as a residence. The Bank has not established that the threat of such action, even if such threat is real and even if there are no apparent defenses, eliminates or bars an automatic exemption from arising under § 55–1004 by virtue of Debtor's ownership and prior actual residence.

Violation of applicable law certainly is not without consequences. Some of those consequences might impact a homestead claim. For example, a breach of this local ordinance could lead to injunctive relief barring continued occupation. This in turn would lead to loss and lack of residence, which is one of the prerequisites for the automatic exemption. But as of the date of the filing of the petition for relief, Debtor had lived at the Property for the better part of a decade, and he had not been evicted or enjoined from that occupation.[11]

In light of the required liberality of construction of exemption statutes in favor of a debtor, the Court finds no persuasive reason to interpret such a potential disqualifying factor as having a present disqualifying effect. The Court concludes that, as presented in the instant case, the violation of zoning ordinances does not vitiate the exemption claimed.

### d. Judicial estoppel

■ The Bank has established that Debtor intended to move his residence

---

9. Other courts have grappled with similarly unorthodox homesteads. *See, e.g., In re Vizentinis,* 175 B.R. 824, 826 (Bankr.E.D.N.Y.1994) ("[N]othing ... limits the homestead exemption [in apartment building] to that portion ... which is *entirely* occupied *exclusively* as a principal residence".); *In re Mirulla,* 163 B.R. 910 (Bankr.D.N.H.1994) (portion of hotel found exempt); *Opryland Music v. Robinson (In re Robinson),* 75 B.R. 985, 987–88 (Bankr.W.D.Mo.1987) (debtor living in the back of a bar could claim homestead; court notes cases validating exemptions in grist mill, stable, and storage barn); *In re Patten,* 71 B.R. 574 (Bankr.D.N.D.1987) (exemption in building rented in part to commercial tenants).

10. The Court's research has also unearthed little on the subject. *In re Herd,* 176 B.R. 312,

314 (Bankr.D.Conn.1994) upheld a federal homestead exemption in a dry-docked boat, notwithstanding violation of state and local law. *In re Lloyd,* 37 F.3d 271, 275 (7th Cir. 1994) discusses some case law reflecting the interface of zoning laws and exemptions, with exemptions generally trumping zoning restrictions. *In re Webb,* 121 B.R. 827 (Bankr. E.D.Ark.1990) allowed a homestead exemption in commercially zoned property. These decisions, however, provide scant guidance for purposes of the present case.

11. It is this extended residency, though "illegal" in the eyes of the Bank (and perhaps also those of the County), that distinguishes the present situation. The Court can easily imagine scenarios leading to a less forgiving view of the violation of ordinance.

from leased premises in Moscow to the Property when the structure was completed. He did not indicate, in any of his submissions to local authorities, that he intended on living in the structure, or that the use to be made of the Property was anything other than that authorized under the light industrial zoning classification. The Bank argues that the principle of judicial estoppel should therefore bar Debtor from now claiming the homestead exemption.

■■■■■ The Bank has provided authority regarding application of this doctrine under Idaho state law. *See e.g., Robertson Supply, Inc. v. Nicholls,* 131 Idaho 99, 952 P.2d 914 (Ct.App.1998); *Loomis v. Church,* 76 Idaho 87, 277 P.2d 561 (1954). However, "[f]ederal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon,* 141 F.3d 1361, 1364 (9th Cir.1998); *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 602–03 (9th Cir.1996).[12]

> Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.

*Rissetto,* 94 F.3d at 601. The rationale for the doctrine was set forth in *Rissetto* as follows:

> The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of

12. Application of this federal doctrine has also been recognized in the context of bankruptcy cases. *In re Meronk,* 249 B.R. 208, 214–15 (9th Cir. BAP 2000); *Henrichsen v. Scovis (In re Scovis),* 231 B.R. 336, 342–43 (9th Cir. BAP 1999).

13. The Idaho Supreme Court cited these same holdings with apparent approval in discussing the equivalent state doctrine in *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). *McKay* also identified the essence of the doctrine: "One may not assert a particular position in order to serve one purpose, then assert a wholly contrary position to serve another." 130 Idaho at 153, 937 P.2d at

justice and regard for the dignity of judicial proceedings.... Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts.... Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

*Id.,* quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).[13] *See also, Meronk,* 249 B.R. at 215; *Scovis,* 231 B.R. at 342.

The inconsistent position taken, according to the Bank, was the application for rezoning approval, which not only omitted mention of the intent to reside, but asked the County for a light industrial classification within which residential uses were expressly prohibited.[14] By applying for this reclassification, Debtor essentially made an assertion to the commission that no residential uses were intended or contemplated, as none were allowed within that zone.[15] Having thus necessarily disavowed residency, Debtor now takes the position that residence was both proper and sufficient to support exemption of up to $50,000 of that Property's value, and he attempts to leverage that exemption for the purpose of avoiding several judgment liens under § 522(f). This new position is inconsistent with his earlier assertion of nonresidential use.

■■■■■ That the Kootenai County zoning authorities may have been misled is not the Court's focus or concern:

1227, quoting *Owen v. Knop,* 853 S.W.2d 638, 643 (Tex.App.1993).

14. The ordinance, Exhibit 9, at § 10.05(A) prohibits "general residential uses." It appears that where the ordinance allows residential use within a zone, it does so clearly. *See, e.g.,* § 9.03(I) (commercial zone; permitted uses.)

15. By executing the application, Debtor verified that all of its "information, statements, attachments and exhibits ... are true to the best of my knowledge." Exhibit 6, at p. 1.

Judicial estoppel enables a court to protect itself from manipulation. The interested party is thus the court in which a litigant takes a position incompatible with one the litigant has previously taken. The tribunal in which the litigant made the first statement could also be interested ... but it is not in a position to do anything about its interest. Therefore, for all practical purposes, the interests of the second court are uniquely implicated and threatened by the taking of an incompatible position.

*Rissetto,* 94 F.3d at 604–05. *Accord, Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 214 (1st Cir.1987) ("If parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficacy of the courts will suffer.")

■ There was discussion in some of the cases to the effect that the first position must be taken before and adopted by a court in earlier litigation, perhaps even the same court that hears the second, inconsistent position. *See, e.g., Milgard Tempering, Inc. v. Selas Corporation of America,* 902 F.2d 703, 716 (9th Cir.1990); *see also, Scovis,* 231 B.R. at 342–43 (discussing cases). But this has now been clarified, and the Ninth Circuit has established that prior statements made in contexts other than judicial proceedings are sufficient triggering events for application of the doctrine in later cases.

■ For example, *Rissetto* notes that the doctrine applies where the prior statement is made in administrative proceedings. *See,* 94 F.3d at 604 (collecting cases). Indeed, "the truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law." *Id.,* quoting *Muellner v.*

**16.** There is little doubt that the Kootenai County commission's ruling on the rezoning application qualifies as quasi-judicial activity. *Idaho Historic Preservation Council, Inc. v. City Council of the City of Boise,* 8 P.3d 646,

*Mars, Inc.,* 714 F.Supp. 351, 357–58 (N.D.Ill.1989).[16]

This approach is confirmed by cases addressing application of the doctrine in litigation under the Americans with Disabilities Act (ADA) where the prior statements are made in, for example, state administrative proceedings. *See, e.g., Rissetto,* 94 F.3d at 604, n. 4. In *Johnson,* the prior representations were found in the plaintiff's application for Social Security benefits, her application for private disability insurance benefits, and in a letter to the Internal Revenue Service. 141 F.3d at 1364–65. While the court rejected a "per se" judicial estoppel rule that would automatically bar ADA relief where prior inconsistent representations existed, 141 F.3d at 1366–68, it held that the doctrine might apply depending upon the facts of the particular case. 141 F.3d at 1368–69. Judge Trott, writing for the Court, stated:

Sometimes, prior representations on disability benefits may demonstrate that a claimant is playing fast and loose with the courts, seeking advantage by advancing mutually exclusive contentions before the courts and benefits providers. In such cases, courts would be within their discretion to estop plaintiffs.

*Id.,* 141 F.3d at 1369.

The Court concludes that the doctrine does and should apply here. Debtor is not entitled to now stand on residency in order to claim a homestead having previously, by his application for rezoning, inherently and necessarily represented that no residence was contemplated.

For the foregoing reasons, the objection of the Bank to the claim of exemption shall be sustained, and the homestead exemption will be disallowed.

649–50 (2000); *Cooper v. Board of County Commissioners of Ada County,* 101 Idaho 407, 410–11, 614 P.2d 947, 950–51 (1980). *See also, Burt v. City of Idaho Falls,* 105 Idaho 65, 67, 665 P.2d 1075, 1077 (1983).

**e. Lien avoidance under Section 522(f)**

 Inasmuch as it has been determined that there is no valid homestead exemption, Debtor cannot sustain his § 522(f) contentions that judicial liens should be avoided on the basis they impair that exemption. The motion brought by Debtor against the Bank under § 522(f) will therefore be denied. This conclusion also renders Debtor's motions against Citibank and Fender & Fender similarly unavailing.

## CONCLUSION

For the reasons set forth above, the Court finds that the Bank's objection to Debtor's claim of a homestead exemption on the real property and improvements located at 4401 West Seltice Way in Couer d'Alene, Idaho is well taken. The objection will be sustained, and the exemption disallowed. In addition, Debtor's motions to avoid the judgment lien of the Bank under § 522(f) will be denied. An appropriate order shall be prepared and submitted by counsel for the Bank.