IN RE: Ronny GAMBOA, Debtor.

CASE NO. 16–22495–RAM

United States Bankruptcy Court,
S.D. Florida.

Signed December 21, 2017

James Schwitalla, Esq, Miami, FL, for Debtor.

## MEMORANDUM OPINION AND ORDER OVERRULING OBJECTION TO HOMESTEAD EXEMPTION

Robert A. Mark, Judge, United States Bankruptcy Court

When he filed his chapter 13 petition, the Debtor was living in a trailer on a 14 acre parcel of land located outside of a municipality. The entire parcel was classified as agricultural for property tax purposes, the Debtor did not claim the homestead exemption for property tax purposes, and he was living in the trailer in violation of a county ordinance. For the reasons discussed in this opinion, none of these facts defeat the Debtor's homestead exemption because the evidence overwhelmingly established that when he filed this case, the Debtor was living on the property and had the intent to permanently reside there. Therefore, the Court is overruling the objection to exemptions filed by Creditors, Gail Perez and Advance Credit, Inc. (the "Objecting Creditors").

### Factual Background

The parties stipulated to the following material facts in their Joint Pretrial Stipulation [DE# 131]:

1. The debtor, Ronny Gamboa (the "Debtor"), is 73 years old, unmarried, and lives alone in a trailer (the "Trailer") located on approximately 14 acres situated at 22600 S.W. 207 Avenue, Miami–Dade

County, Florida (the "Property"). The Property is comprised of a single lot, and is not located within a municipality. The Trailer contains a bathroom with a shower, two bedrooms, a kitchen, and a living room, and has FPL electrical service and satellite television service. The Trailer has water service from an on-site well and electric pump system, and is attached to a septic tank.

2. Debtor purchased the Property in 1995, and has owned it continuously since that time.

3. Debtor owns the Property individually.

4. The Property is the only real estate the Debtor has owned since [the Objecting Creditors] foreclosed on property Debtor previously owned that was located at 2103 N. California Avenue, Chicago, Illinois.

5. Debtor bought the Trailer from the owner of the adjacent property located immediately to the north of the Property in 2008.

6. Debtor hired someone to hitch the Trailer, which is approximately 40' long, to a very large tractor and pull it onto the Property in 2008.

7. In 2008, after Debtor caused the Trailer to be brought onto the Property, he poured a 1500 square foot concrete patio immediately in front of it.

8. In mid-November 2013, Debtor left Chicago, Illinois, drove to the Property, moved himself and his personal belongings into the Trailer, and began living there full-time. He has lived there continuously ever since.

9. Debtor began receiving mail at the Property as early as January 2014.

10. At the time he moved into the Trailer, Debtor believed he could legally reside in the Trailer, and therefore had no intention of building another residence on the Property.

11. Debtor's Property remains 100% agricultural classification and no part of the Property has been separately assessed for tax purposes for residential use.

12. Debtor's schedules and amended schedules submitted in this case have not changed in any material respect through [the date of this Stipulation].

13. Debtor's total and exclusive current regular monthly income is $717 per month.

14. Debtor does not anticipate an increase to his regular monthly income for the next 5 years.

15. Debtor first applied for a building permit on August 12, 2016.

16. As of [the date of this Stipulation], no building permit has been issued to build a home on the Property.

17. Debtor has derived no income from the Property since 2014.

18. Debtor does not anticipate deriving any income from the Property for the next 5 years.

Although not included in the Joint Pretrial Stipulation, the facts relating to the Objecting Creditors' judgment lien were determined in the Court's Order Overruling In Part Creditors' Objection to Exemptions [DE# 60], an Order discussed in greater detail later in this opinion. The Objecting Creditors hold two Illinois state court judgments against the Debtor, one for $141,562.30 entered on September 16, 2011 and one for $71,632.77, entered on February 6, 2012. The judgments were recorded in the Miami–Dade County Official Records on July 25, 2012, but that recording did not create a lien on the Debtor's Property because the recorded judgments did not include the Objecting Creditors' address in violation of Fla. Stat. § 55.10. The Objecting Creditors' judg-

ment lien on the Debtor's Property was not perfected until the Objecting Creditors recorded the Illinois judgments a second time on January 8, 2015, <u>after</u> the Debtor began living full-time in the Trailer on the Property.

The Court will provide additional material facts later in this opinion in its discussion of the evidence presented at trial.

### Procedural Background

The Debtor filed a voluntary chapter 13 petition on September 9, 2016. In his Schedule C [DE# 1, p. 19], the Debtor listed the Property as exempt under Article X, Section 4 of the Florida Constitution. On December 14, 2016, Creditors, Gail Perez and Advance Credit, Inc. (the "Objecting Creditors"), filed their Objection to Debtor's Homestead Exemption [DE# 46] (the "Homestead Objection").

The Objecting Creditors seek to disallow the homestead exemption in its entirety based upon the following facts:

A.  The entire Property was classified agricultural for ad valorem tax purposes and a portion would have to be reclassified as residential to legally have a residence on the Property;

B.  Although the Debtor was living in the Trailer on the Property on the petition date, the Trailer was not an approved dwelling under an applicable Miami–Dade County ordinance; and

C.  The Debtor had not applied for a homestead tax exemption.

The Objecting Creditors argue alternatively that the entire Property cannot be claimed as homestead because the Debtor was allegedly utilizing most of the Property for business purposes. Finally, the Objecting Creditors argue that the exemption, if allowed, should be capped at $160,375 under 11 U.S.C. § 522(p) because the Debtor did not live on the Property until mid-November 2013, a date less than 1215 days before he filed his chapter 7 petition.

### Pretrial Rulings

The Court conducted a prehearing conference on the Homestead Objection on January 26, 2017. Prior to the hearing, the Court reviewed the lengthy legal arguments contained in the Homestead Objection, the Debtor's Response to the [Homestead Objection] [DE# 48] and the Objecting Creditors' Reply to Debtor's Response [DE# 54].

On March 16, 2017, the Court entered its Order Overruling in Part Creditors' Objection to Exemptions and Setting Further Prehearing Conference (the "Partial Ruling") [DE# 60]. The Partial Ruling overruled the Objection to the extent it argued the following:

A.  That the exemption should be disallowed because the Debtor's home on the filing date was a trailer on the Property that was prohibited from being a permanent dwelling under an applicable Miami–Dade County ordinance;

B.  That the exemption should be disallowed because the Debtor did not file for a homestead tax exemption for the Property;

C.  That the exemption should be disallowed because the Property was classified agricultural for property tax purposes; and

D.  That the exemption, if allowed at all, should be limited to $160,375 under § 522(p) of the Bankruptcy Code. The Court found that Property owned prior to the 1,215 day period that becomes homestead within 1,215 days of the bankruptcy filing is not subject to the § 522(p) cap, citing and agreeing with *In re Reinhard*, 377 B.R. 315 (Bankr. N.D. Fla. 2007).

Based upon these rulings, the Partial Ruling identified the following remaining issues:

(1) Did the Debtor establish his intent to permanently reside in the Property prior to January 8, 2015, the date on which the Objecting Creditor's judgment lien was perfected?

(2) What was the Debtor's intended use for the Property as of the Filing Date?

(3) Do the use limitations in the Florida Constitution for properties within a municipality apply to properties outside a municipality?

Prior to trial, the Objecting Creditors abandoned their argument that the Debtor was using or intended to use the Property for business purposes. This rendered moot one legal issue identified in the Partial Ruling, namely whether the use limitations for properties within a municipality apply to properties outside a municipality when property is claimed exempt under the homestead provisions in the Florida Constitution.

Although it is now dicta, the Court reiterates here its ruling on this issue announced at a hearing prior to trial. This Court agrees with and adopts the analysis of *In re Earnest*, No. 08–4408–3F7, 2009 Bankr. LEXIS 1821 (Bankr. M.D. Fla. March 26, 2009). In *Earnest*, the court held that the language of Article X, § 4 limiting a homestead to the residence of the owner, or the owner's family, applies only within a municipality. Therefore, even if the Debtor had been renting part of the Property for business purposes on the filing date of his bankruptcy petition, the rented portion of the Property would have remained eligible for homestead protection.[1]

### Evidence and Arguments at Trial

The Homestead Objection was tried on October 19th and 20th, 2017. The only issue at trial was whether the Debtor intended to permanently reside on the Property prior to January 8, 2015, the date on which the Objecting Creditors' judgment lien was perfected, and whether he maintained the intent to permanently reside on the Property when he filed his chapter 13 petition on September 9, 2016 (the "Filing Date").

At trial, the Objecting Creditors presented testimony and witnesses confirming the agricultural classification of the Property, and also proved that Miami–Dade County had issued citations to the Debtor for living in the Trailer in violation of a county ordinance. As described earlier, the Court's Partial Ruling overruled the Objection to Exemptions to the extent it relied on the agricultural classification or the county ordinance violation. However, the Partial Ruling also stated that the Objecting Creditors could use these facts to argue that the Debtor lacked the intent to permanently reside on the Property when he filed this bankruptcy case.

The Objecting Creditors also presented evidence regarding the Debtor's efforts to obtain a building permit to build a house on the Property. Prior to trial, the Debtor objected to the relevance of postpetition efforts to obtain a building permit. The Court ruled that this evidence would be allowed because of its possible relevance to the Debtor's intent on the Filing Date.

### A. The Debtor's Efforts to Obtain a Building Permit

The Objecting Creditors presented the testimony of Michelle Augustine, a Clerk

---

1. Bankruptcy Judge Kimball of this district also adopted and followed *Earnest* in his July 21, 2017 Order Overruling Trustee's Objection to Homestead Exemption and Denying Application for Turnover, Case No. 17–11513–EPK [DE# 39]. Bankruptcy Judge Funk has also cited to and adopted his *Earnest* decision in *In re Tinseth*, No. 3:16–bk–1694–JAF, 2017 WL 875776 (Bankr. M.D. Fla. March 3, 2017).

Supervisor for Miami–Dade County. Ms. Augustine's testimony and the exhibits relating to her testimony confirmed that the Debtor submitted a building permit application on August 12, 2016, a little less than a month before he filed his chapter 13 petition. The exhibits show that the Debtor obtained approvals from several of the necessary county departments, but still needs approvals from other departments, including DERM, to begin construction.

The Debtor's original plan was for a 1,132 square foot house. That plan was rejected as too small based on the zoning for the Property, and a revised plan was submitted for a 1,900 square foot house. *See* Debtor's Ex. 7 and the testimony of the Debtor's architect, Alfonso Rico, who prepared both sets of plans. As of the date of trial, the Debtor had not received all of the necessary county approvals and the county had not issued a building permit.

At trial, the Objecting Creditors questioned the Debtor's financial ability to build a house on the Property. Among other things, and by the Debtor's own admission, building a house will cost more than one hundred thousand dollars, and the Debtor has no income. The Debtor testified that he hoped to receive money as gifts from friends and relatives and would try to get a job to help pay the expenses of the house when it was built.

### B. The Property's Agricultural Classification

The Objecting Creditors presented the testimony of Raul Nillo, the Supervisor of the agricultural section of the Miami–Dade County Property Appraiser's Office. Mr. Nillo confirmed that the Property has been classified agricultural since 2001. At that time, the Debtor was leasing the Property for farming. The agricultural classification has remained on the Property since 2001. There was no requirement for the Debtor to reapply each year.

Mr. Nillo explained that property classified as agricultural is eligible for a substantial property tax exemption that significantly reduces the property taxes from the amount that would be due without this classification. He testified further that property should be reclassified when it is no longer being used for agricultural purposes. Finally, Mr. Nillo testified that the county requires a landowner to reclassify a portion of his or her property as residential if the landowner is living on the property. As noted earlier, it is a stipulated fact that no portion of the Debtor's Property has been separately assessed for residential use.

### C. Living in the Trailer Violates a Miami–Dade County Ordinance

In 2016, the Objecting Creditors attempted to execute their perfected judgment liens against the Debtor's Property. The Debtor asserted the homestead exemption. In May 2016, Michel Weisz, counsel for the Objecting Creditors, contacted Miami–Dade County and advised the County that the Debtor was living in a Trailer on the Property. This "tip" resulted in the issuance of a citation against the Debtor by the County.

Details regarding the County citation were presented in exhibits introduced by the Objecting Creditors and through the testimony of Israel Maldonado, an agricultural compliance officer for Miami–Dade County. Mr. Maldonado testified that the County issued violation notices to the Debtor in 2016 for living in the Trailer in violation of a County ordinance. Objecting Creditors' Ex. 8 is a violation notice (the "Violation Notice") issued by Mr. Maldonado on May 16, 2016. The Violation Notice cites the Debtor for living in a trailer on property zoned agricultural in violation of Miami–Dade County Code Section 33–279.

## Discussion

Florida's homestead protection is found in Article X, Section 4, of the Florida Constitution, which, in pertinent part, provides:

(a) There shall be exempt from forced sale ... the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, ... or if located within a municipality, to the extent of one-half acre of contiguous land upon which the exemption shall be limited to the residence of the owner or his family.

The Debtor's Property is located outside a municipality in unincorporated Miami–Dade County. Therefore, if the Debtor is eligible for the constitutional exemption, it will protect all 14 acres of his Property.

■ To be eligible for the homestead exemption, a debtor must have the actual intention to make the property his permanent residence and must actually be living on the property. *Hillsborough Inv. Co. v. Wilcox*, 152 Fla. 889, 13 So.2d 448, 452 (Fla. 1943). In this case, the Objecting Creditors concede that the Debtor both lived on the Property full-time beginning in late 2013 and intended to make the Property his permanent residence. So, what is the basis for the challenge?

■ The Objecting Creditors rely, in part, on the agricultural classification of the Property and the need for an owner to reclassify a portion as residential for property tax purposes if the landowner has a residence on the Property. As previously determined in the Court's Partial Ruling, the Property's agricultural classification does not defeat the homestead claim. The Debtor may need to request reclassification of that portion of the Property containing his residence, and the entire Property may be subject to reclassification as residential for tax purposes, because there is no present farming activity. These classification changes will certainly increase the Debtor's property taxes, but the present classification does not affect the Debtor's constitutional right to the homestead exemption.

■ The Objecting Creditors primarily rely on the fact that the Debtor was living in the Trailer in violation of a County ordinance when they perfected their judgment lien in January 2015, and he remained in violation when he filed his bankruptcy petition in September 2016 (the "Filing Date"). Because his dwelling, the Trailer, cannot be a permanent legal dwelling, the Objecting Creditors argue that he could not have had the requisite intent to permanently reside on the Property. According to the Objecting Creditors, he could not have established his homestead on the Filing Date unless he was living in a permitted and completed house.

■ The Court finds no support for this narrow interpretation of the constitutional homestead protection. It is well-settled that Florida's homestead exemption should be liberally construed for the benefit of the homestead claimant. *Edward Leasing Corp. v. Uhlig*, 652 F.Supp. 1409 (S.D. Fla. 1987); *In re Wilson*, 393 B.R. 778 (Bankr. S.D. Fla. 2008). Certainly, a debtor's residence does not have to be a house. *In re McClain*, 281 B.R. 769, 773 (Bankr. M.D. Fla. 2002) ("[S]o long as a debtor actually lived on real property being claimed as exempt, a non-exempt tree house or tent would establish the requisite degree of permanency"). So, the issue comes back to an issue the Court already addressed in its Partial Ruling: Does the Debtor lose homestead protection because the Trailer was on the Property in violation of a County ordinance? For the reasons discussed in the Partial Ruling, reinforced by additional

authority reviewed by the Court, the answer is no.

Debtor's only real property is and was the 14 acre Property. He intended to make the Trailer his permanent residence when the Objecting Creditors perfected their judgment lien and maintained that intent on the Filing Date. The fact that the Trailer was not a lawful abode under a County ordinance does not defeat the constitutional homestead exemption.

### No Published Decisions Sustain an Objection to a Homestead Exemption Based Upon Local Zoning or Ordinance Violations

Several courts have allowed the homestead exemption where the debtor occupied the property in violation of city, county or state law or in violation of local zoning laws. For example, in *In re Kain*, No. 12-31492-KKS, 2014 WL 10250731 (Bankr. N.D. Fla. Feb. 14, 2014), the debtor was living in a portion of the property that was zoned commercial and housed the debtor's medical practice. A creditor objected to the debtor exempting any portion of the property as homestead. Prepetition, the debtor's request for a zoning variance to allow her to live on the property was denied and the debtor was subject to fines of $10.00 per day for the zoning violation of living in commercially-zoned property. The court did not find the zoning violation determinative and overruled the creditor's objection as to the portion of the property that functioned as the debtor's residence. 2014 WL 10250731 at *1.

The Court also finds persuasive an Idaho bankruptcy court decision, *In re Pich*, 253 B.R. 562 (Bankr. D. Idaho 2000). In *Pich*, the debtor was living in a building with a zoning classification of "light industrial," a classification that does not permit residential use. *Id.* at 565. Despite the absence of zoning authorization to reside in the building, the building was the debt-or's residence for nine years up through and including the filing date of his bankruptcy petition.

A creditor objected to the debtor's homestead claim arguing that the debtor was living on the property in violation of local zoning ordinances, and that this violation precluded the debtor from claiming a valid homestead exemption. The court found that the debtor's occupation of the property was in violation of local law and exposed the debtor to possible civil or criminal penalties. *Id.* at 567. Nevertheless, the court held that the debtor's violation of a zoning ordinance did not defeat his homestead exemption. *Id.* The *Pich* court noted that the objecting creditor cited no authority to support its argument that a violation of a local ordinance precluded the debtor from claiming a valid homestead exemption. *Id.* The *Pich* decision was cited and followed in *In re Carpenter*, 559 B.R. 551 (Bankr. D. R.I. 2016) (zoning violation was not a basis to deny homestead exemption).

A Missouri bankruptcy court also issued an opinion consistent with the result reached here. *In re Turner*, No. 04-40267DRD, 2005 WL 1397150 (Bankr. W.D. Mo. June 1, 2005). In *Turner*, the debtor and his wife separated eight months before he filed bankruptcy. The debtor then moved into a structure that he had previously rented out as a commercial storage facility. The property was zoned commercial. The trustee objected to the debtor's homestead exemption arguing that a commercial structure could not qualify as a dwelling house under Missouri Law. The trustee also argued that the debtor's occupancy was in violation of the commercial zoning designation. Like all courts before and since, the *Turner* court found no authority for invalidating a homestead claim based upon a zoning restric-

tion, and the trustee's objection was overruled. *Id.* at *3, *4.

An earlier bankruptcy decision from Connecticut rejected a similar argument that debtor's violation of state law defeated his homestead exemption. *In re Herd*, 176 B.R. 312 (Bankr. D. Conn. 1994). In *Herd*, the debtor began living on his boat when he separated from his wife. About four months before he filed his bankruptcy petition, a judgment creditor obtained a court order requiring the boat to be dry-docked. The debtor continued to live on the boat with no certificate of occupancy and in violation of state statutes, the public health code and local zoning regulations. *Id.* at 313. Despite the undisputed evidence that the debtor was living on the boat illegally, the court overruled the judgment creditor's objection to the debtor's homestead exemption claim. *Id.* at 314.

The facts in *Herd* have a striking similarity to the facts here relating to the actions of the objecting creditor. In *Herd*, the debtor's use of the boat as his residence became illegal only after the objecting creditor obtained a state court order dry-docking the boat. In this case, if the Objecting Creditors had not "informed" the County that Mr. Gamboa was living in the Trailer in violation of a County ordinance, he may have lived "happily ever after" in the Trailer, without the County ever citing him for the ordinance violation.

The cases cited by the Objecting Creditors in their Notice of Filing Supplemental Authority [DE# 129] are readily distinguishable and do not support the Homestead Objection. First, the Objecting Creditors cite to an old Florida Supreme Court case, *Drucker v. Rosenstein*, 19 Fla. 191 (Fla. 1882). In that case, a judgment creditor sought to execute his judgment against a vacant lot owned by the defendant. The defendant purchased the lot while insolvent, shortly before the judgment was en-

tered. He filed a statement in the county declaring the lot his homestead, but at the time he filed his statement, the lot was vacant, and as of the judgment date, it was still vacant and not occupied by the defendant. The defendant argued that he had entered into a contract to build a house and intended to live there. The court rejected the homestead claim, finding that actual occupancy is necessary, not the mere intent to live on the property in the future. 19 Fla. at 198.

The only common fact between *Drucker* and this case is that both the Debtor here and the defendant in *Drucker* testified that they intended to build houses on the properties at issue. Otherwise, the *Drucker* decision is readily distinguishable. Unlike the defendant in *Drucker*, Mr. Gamboa was living on the Property in his Trailer. The actual occupancy requirement was unquestionably satisfied.

The Objecting Creditors also rely on *In re Geiger*, 569 B.R. 846 (Bankr. M.D. Fla. 2016). In that case, the debtor inherited a property owned by his grandmother. In 2012, he moved out of his marital home because of marital problems and moved into a trailer on the property. He stayed only ten days and then moved out because there was mold and holes in the roof that made the property unlivable. Two years later, in 2014, the debtor filed his chapter 7 petition. Notably, he was living in the marital home when he filed and had not lived on the property claimed as homestead except for the 10 day period two years earlier.

Not surprisingly, the court rejected the debtor's homestead claim, noting that the homestead character of a property "depends upon an actual intention to reside thereon as a permanent place of residence coupled with the fact of residence." 569 B.R. at 848 (emphasis added) (quoting *Hillsborough Inv. Co. v. Wilcox*, 152 Fla.

889, 13 So.2d 448, 452 (1943)). First, the court found that the debtor's actions were inconsistent with his stated intent to make the property his permanent residence. Second, and most critically, the undisputed evidence was that the debtor was not living on the property on the petition date and had never lived there except for ten days two years before his bankruptcy.

Like *Drucker*, the *Geiger* decision does not support the Objecting Creditor's argument. Here, whether or not the Debtor will be able to build the house he is planning, the Debtor has lived on the Property since 2013 and his actions have been wholly consistent with his intent to make the Property his permanent residence.

During closing argument after trial, the Objecting Creditors attempted to distinguish the ordinance violation here from the zoning or ordinance violations that did not preclude homestead claims in some of the above-cited cases. They argued that living in a "legal" structure where the use for residential purposes is illegal is different from living in a structure, in this case, the Trailer, that is not a structure "legally" on the property. This is not a meaningful distinction and certainly not a distinction supported by any case law. Like the debtor in *Pich* who ultimately could be removed from his property because of the zoning violation, the Debtor here may ultimately be removed from the Trailer if he does not get a building permit and construct a house. However, the possibility of enforcement that could result in a forced eviction does not defeat the exemption, because the Debtor was living in the Trailer on the filing date of the case and intended to remain on the Property as his permanent residence.

Under an applicable County ordinance, the Debtor could legally use the Trailer as his residence while building a home, but such use is lawful only if a building permit has been issued. The Debtor did not have a building permit on the Filing Date and still did not have a permit when the Court conducted the trial on the Homestead Objection. The Objecting Creditors also presented evidence casting doubt on the Debtor's financial ability to build a house even if he gets his building permit. These facts do not support the Homestead Objection. The relevance, at all, of the Debtor's post-petition efforts to obtain a building permit corroborate the Debtor's unrebutted testimony that he intended to make the Property his permanent residence.

If the County had not been tipped off by the Objecting Creditors, the Debtor would have been content to continue living in the Trailer. When he was cited by the County, he hired an architect to draw up plans to build a small house and has pursued all of the necessary County department approvals. Perhaps he will not be able to afford to build a house and perhaps the County will ultimately force him to move out of the Trailer. But one thing is certain: This Debtor has made the Property his permanent residence since he moved into the Trailer in 2013, and he intends to stay on the Property as his permanent residence. Those are the only facts that ultimately matter. For these reasons, it is—

**ORDERED** that the Homestead Objection [DE# 46] is denied.