**In re Rochelle Renae MOORE, Debtor.**

**No. 01–00632.**

United States Bankruptcy Court,
D. Idaho.

Nov. 7, 2001.

Howard R. Foley, Foley, Freeman & Borton, Chartered, Meridian, Idaho, for Rochelle Moore, debtor.

Eric S. Rossman, Kevin E. Dinius, White Peterson, Nampa, Idaho, for John Mancera, dba Craftsman Construction Co., creditor.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### I. INTRODUCTION

Before the Court is an objection by creditor John Mancera, dba Craftsman Construction Company ("Mancera"), to a declaration of homestead made by debtor Rochelle Moore ("Moore"). Having reviewed the record and evidence, and considered the parties' arguments and relevant legal authority, the Court hereby enters the following findings of fact and conclusions of law. Fed.R.Bankr.P. 7052, incorporated by Fed.R.Bankr.P. 9014.

### II. PROCEDURAL AND FACTUAL BACKGROUND

Moore filed a chapter 13 petition on March 9, 2001. Her schedules and statements were filed on March 23, 2001. At the time of filing her petition, Moore lived at 2104 W. Targee St., Boise, Idaho 83705 ("Targee Property"). *See* schedules A, D.[1] That property was allegedly worth $98,000. *Id.* Countrywide Home Loans, Inc. ("Countrywide") held a $75,282.25 security interest in the Targee Property in the form of a Promissory Note and Deed of Trust. *See* schedule D. Ocwen, a Los Angeles based lending institution, held a second position mortgage on the Targee Property in the amount of $34,593.75. *Id.* This left Ocwen with a deficiency and Moore with no equity in her home.

The Franklin Property, which became the subject of a trial regarding Mancera and Moore[2], was listed as being a "business" property and having a value of $150,000. *See* schedules A, D. The Franklin Property was encumbered by a $129,197.05 mortgage interest held by "GMAC Mortgage." *See* schedule D.

---

1. Those schedules identified the Targee Property as her "residence."

2. Moore objected to Mancera's claim. *See* Doc. No. 16, filed April 18, 2001. On May 16, 2001, Moore filed a motion to determine the status of Mancera's claim. *See* Doc. No. 23. Hearing thereon was held over the course of several days. On August 21, 2001, this Court entered extensive oral findings of fact and conclusions of law on the contested matters. An Order, Doc. No. 39, was entered on that date upon those findings and conclusions. In sum, the Court found that Mancera's asserted secured claim of $78,565.14, Claim No. 7, would be disallowed. Instead, the Court allowed Mancera an unsecured claim of $36,664.00, plus interest.

Mancera also claimed a secured position in the Franklin Property. *See* Proof of Claim No. 7, filed April 6, 2001. Mancera that same day filed a Request for Notice under Rule 2002. *See* Doc. No. 11.

An amended schedule C was filed on April 16, 2001, declaring a homestead exemption under Idaho Code § 55–1003 on the Franklin Property, which was now described as a "business/residence." *Id.*[3] Prior to that, no exemption had been claimed by Moore with regard to either parcel of property. Neither the Trustee nor any creditors were served with notice of the amendment.

The first meeting of creditors was held on April 18, 2001, two days after the amendment was filed. Also on that day, Moore filed her objection to Mancera's claim asserted against the Franklin Property. *See* Doc. No. 16. Moore did not move into the Franklin Property until August or September.

On June 4, 2001, pursuant to a stipulation entered into by the chapter 13 trustee ("Trustee"), Moore and Countrywide, the Court entered an Order granting Countrywide relief from the automatic stay regarding the Targee Property. *See* Stipulation for Relief from Stay, Doc. No. 24. The language in the stipulation cites to a nonexistent homestead exemption on the Targee Property as a basis for entering into the agreement. *Id.* at p. 2, ¶ 6. However, as explained by the Trustee at hearing, he

relied solely on the lack of equity in the Targee Property in deciding to sign the stipulation.

On September 14, Moore converted her case to chapter 7. Prior to that conversion, Mancera had filed a motion to reconsider the Court's ruling of August 21. At hearing on September 20 regarding this motion, the existence of Moore's claimed exemption came to light. The next day, September 21, Mancera filed an "Objection to Debtor's Homestead Exemption." Doc. No. 52. Then, on October 12, Mancera filed a motion seeking an order affirmatively amending schedule C so that a homestead exemption is claimed in the Targee Property, and not the Franklin Property. Argument was heard regarding these two issues at a hearing on October 23, after which the Court took them under advisement. These matters are now ripe for decision.

## III. DISCUSSION AND DISPOSITION

### A. Objection to exemption

#### 1. Timeliness of objection[4]

■ Federal Rule of Bankruptcy Procedure 4003(b) provides in pertinent part:

A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.

---

3. Local Bankruptcy Rule 4003.1 requires that "each item of property claimed as exempt, shall be described with specificity, without reference to other schedules." This rule is designed to deal with the "common problem of failure of the debtors to provide sufficient information regarding the exemptions claimed." Advisory Committee Notes to LBR 4003.1. Moore's amended schedule C did not comply with the Local Rule. However, the Court elects to address other issues with regard to the claimed exemption, and does not

base its decision today on the lack of compliance with this rule.

4. Mancera argued, in part, that his objection was timely because a new 30 day window arises under Rule 4003(b) when a case is converted from chapter 13 to chapter 7. The Court, at the October 23 hearing, summarily rejected that argument in light of *Smith v. Kennedy (In re Smith)*, 235 F.3d 472, 477–478 (9th Cir.2000).

The amendment to schedule C was made on April 16, two days before the April 18 first meeting of creditors. Therefore, the 30 day period for objecting to claims of exemption began on April 18 and ended May 18. Fed.R.Bankr.P. 4003(b). Mancera's objection was not filed until September 21, well beyond the May 18 bar date.

As stated earlier, however, Moore did not serve notice of the amended schedule C on any party. Mancera argues that this lack of notice should toll operation of Rule 4003(b). The Court agrees.

Federal Rule of Bankruptcy Procedure 1009(a) provides that "[t]he debtor shall give notice of amendment to the trustee and to any entity affected thereby." If a party is entitled to notice, *i.e.*, if it is an "entity affected", and it does not receive actual notice, the 30 day objection period will be tolled until such notice is received. *See Preblich v. Battley*, 181 F.3d 1048, 1052–1053 (9th Cir.1999), citing *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 614–15 (9th Cir. 1988).[5]

Moore's amendment to schedule C came subsequent to Mancera's April 6 filing of his request for notice and his proof of claim asserting a lien on the Franklin Property. Furthermore, Moore's objection to Mancera's secured claim came only two days after her amendment. The Court thus finds and concludes that Mancera was known to her to be an entity who would have been affected by the amendment. Mancera was entitled to notice of the amendment. Thus, with respect to Mancera, the running of the time bar of Rule 4003(b) did not begin until September 20, 2001, the date Mancera became aware of the amendment to schedule C.[6] Mancera's objection, being filed only one day later, is therefore timely.

## 2. Franklin Property as a homestead

■ Section 522(b)(2)(A) allows debtors to exempt any property that is exempt under:

> . . . State or local law that is applicable on the date of filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place . . . .

Accordingly, the relevant date for determining the status of a homestead exemption is the date of filing. *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001).

■ Idaho has elected to opt out of the federal exemptions. *See* Idaho Code § 11–609. Therefore, Moore is limited to the exemptions allowed under Idaho state law. *In re Steinmetz*, 261 B.R. 32, 01.1 I.B.C.R. 28 (Bankr.D.Idaho 2001). Exemption statutes are to be liberally construed in favor of the debtor, and Mancera, as the objecting party, bears the burden of proving that Moore's exemption is not properly claimed. Fed.R.Bankr.P. 4003(c); *Steinmetz*, 261 B.R. 32, 01.1 I.B.C.R. at 28.

■ Idaho Code § 55–1001 defines a "homestead":

> "Homestead" means and consists of the dwelling house or the mobile home in which the owner resides or intends to reside . . . . Property included in the

---

**5.** Notice will be deemed sufficient once the affected creditor has "actual notice" of some sort. *See First National Bank of St. Peter v. Peterson (In re Peterson)*, 929 F.2d 385, 388 (8th Cir.1991).

**6.** Moore did not prove actual notice was received by Mancera at an earlier date, and the Court will not, under the circumstances of this case, ascribe a duty on the creditor to search the record for the amendment.

homestead must be actually intended or used as a principal home for the owner. Idaho Code § 55–1001. As explained by the Court in *In re Burke,* 96.1 I.B.C.R. 40 (Bankr.D.Idaho 1996), there are two ways to create a homestead:

> One way to establish a homestead is to simply live on the claimed property. *See* Idaho Code §§ 55–1001(2) and 55–1004(1). . . . A second method to evidence a homestead is by filing a written declaration of homestead. *See* Idaho Code 55–1004(2). . . . This method may be used by an owner who is not currently living on the property, but who intends to reside thereon. Idaho Code §§ 55–1001(2) and 55–1004(1). . . . Whether the owners "intend" to construct their principle residence on the property claimed as exempt, as that term has been defined by the Court, is a question of fact.

96.1 I.B.C.R. at 40 (some citations omitted).

■■■■ Moore lived in the Targee Property on the date the petition for relief was filed. Indeed, she called that property her "residence" on schedule A.[7] In regard to her assertion of a homestead in the Franklin Property, therefore, Idaho Code § 55–1004(2) is not only applicable, it is determinative. It states:

> An owner who selects a homestead from unimproved or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recorder of the county in which the land is located. However, if the owner also owns another parcel of property on which the owner presently resides or in which the owner claims a homestead, the owner must also execute a declaration of

abandonment of homestead on that other property and file the same for record with the recorder of the county in which the land is located.

Moore's purported homestead exemption in the Franklin Property does not comply with § 55–1004(2). She lived on Targee at filing. If she wanted to select the Franklin Property—improved land not yet occupied—as a homestead, she was required to execute and file of record a declaration of homestead on that property, together with a declaration of abandonment of homestead on the Targee Property. She did not. The exemption will be disallowed.

### 3. Judicial estoppel

Mancera also argued that Moore should be judicially estopped from claiming the homestead exemption on the Franklin Property.

■■■■ As recently set forth by this Court in *In re Pich,* 253 B.R. 562, 00.4 I.B.C.R. 183 (Bankr.D.Idaho 2000):

> Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.

*Rissetto,* 94 F.3d at 601. The rationale for the doctrine was set forth in *Rissetto* as follows:

> The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. . . . Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts. . . . Because it is intended to protect the dignity of the judicial pro-

---

7. Schedules are subject to treatment as admissions under Fed.R.Evid. 801(d)(2). *See In*

*re Bohrer,* 266 B.R. 200, 201 (Bankr.N.D.Cal. 2001).

cess, it is an equitable doctrine invoked by a court at its discretion.

*Id.,* quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990). *See also, Meronk,* 249 B.R. at 215; *Scovis,* 231 B.R. at 342.

*Id.,* 253 B.R. at 568–69; 00.4 I.B.C.R. 185–187 (footnote omitted).[8]

▮ As in *Pich,* the problem is one of inconsistent legal positions. Moore never provided any indication to either the Court or Mancera, throughout her litigation over Mancera's lien in the Franklin Property, that she was residing or intending to reside at that property or claiming a homestead on it. Nor did she cause the reference to the homestead in the Targee Property appearing in the Countrywide stipulation to be deleted. Additionally, it does not appear as if she made her intentions to live in the Franklin Property clear to the zoning authorities when she was seeking approval for its use as a daycare facility. *See* Doc. No. 59, Affidavit of Erica S. Phillips, Exhibit A. *See also,* Exhibit 140 (Franklin Property remodeling blueprints), at A–2. *Accord Pich,* 253 B.R. at 568–69 (holding that prior representations to zoning authorities inconsistent with positions later taken can be considered for judicial estoppel purposes).

Moore's actions with respect to this homestead exemption suggest an attempt to manipulate the process and evidence bad faith. *See In re Hoffpauir,* 258 B.R. 447, 452 (Bankr.D.Idaho 2001), citing *Arnold v. Gill (In re Arnold),* 252 B.R. 778, 784–86 (9th Cir. BAP 2000) (bad faith and prejudice to creditors may prevent a debtor from amending schedules). But even if the amendment were not to be barred on bad faith grounds, the principle of judicial estoppel stands in the way of validating Moore's attempt to exempt the Franklin Property. This additionally supports the determination that Mancera's objection should be sustained and the exemption disallowed.

**B. Mancera's motion for amendment of schedule C**

▮ Mancera also asks the Court to use its equitable powers to force Moore to claim an exemption in the Targee Property. The Court will not do so.

Moore has no equity in the Targee Property. That property is the subject of a stipulation with Countrywide under which Moore agreed to surrender her interest. *See* Doc. No. 24. Moore has never asserted an exemption in that property.

The Court sees no reason to force Moore to now claim the Targee Property as exempt. The decision whether or not to claim an exemption is a choice that should be left to the discretion of the debtor. The Court's role is to ensure the propriety of exemptions once they are claimed, as was done here with regard to the Franklin Property. Mancera's motion to require amendment of schedule C will be denied.

**IV. CONCLUSION**

Based on the foregoing, the Court will sustain Mancera's objection to Moore's homestead exemption in the Franklin Property, and disallow that exemption. Mancera's motion to amend Moore's schedule C will be denied. Counsel for Mancera shall submit a proposed order consistent herewith.

---

8. Moore here claims a homestead exemption in a building that was to be and now is used as a business. As in *Pich,* that alone is not necessarily an insurmountable problem.