In re William A. ROBERTS, Debtor.

No. 00–18079–WCH.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Nov. 21, 2001.

Neal E. Satran of Satran & Associates, Westwood, MA, for Debtor.

Steven E. Shamban of Stephen E. Shamban Law Offices, P.C., Braintree, MA, for trustee.

## MEMORANDUM OF DECISION REGARDING CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION

WILLIAM C. HILLMAN, Chief Judge.

### I. *Introduction*

The Chapter 7 trustee filed an objection to the Debtor's homestead exemption on several grounds including whether the Debtor's declaration of homestead was invalid at the time it was filed because the Debtor lacked the necessary intent to occupy the property. As set forth below, because I conclude that the Debtor did not establish the requisite intent, I will enter a separate order sustaining the objection to exemption.

### II. *Background and Facts*

The facts necessary to resolve this matter are not in dispute. William A. Roberts (the "Debtor") and Alison A. Roberts ("Mrs.Roberts") were married on May 4, 1985. On June 19, 1992, they purchased property located at 133 Red Brook Road, East Falmouth, MA (the "Property") as tenants by the entirety. On April 29, 1996, Mrs. Roberts filed a Complaint for Divorce. In the complaint, Mrs. Roberts listed the Debtor as residing in a location other than the Property. On January 17, 1997, the Debtor recorded a Declaration of Homestead for the Property pursuant to Mass. Gen. Laws ch. 188, § 1. The Debtor did not live at the Property at the time of the recording. On June 2, 1997, Abigail C.

McGuire, as conservator for Mrs. Roberts, caused to be recorded a Confirmatory Declaration of Homestead for the Property pursuant to Mass. Gen. Laws ch. 188, § 1A.[1]

On March 20, 1998, the Debtor and Mrs. Roberts obtained a Judgment of Divorce Nisi (the "Judgment") which provided in paragraph 13 that Mrs. Roberts "shall have exclusive use and occupancy of the [Property] ... until the emancipation of the children." The Judgment further provided in paragraph 14 that

> [u]pon the expiration of the use and occupancy period the [Property] ... shall be placed on the market for sale at a price agreed to between the parties.... At the time of sale of the property [Mrs. Roberts] shall be entitled to two-thirds of the net proceeds and the [Debtor] shall be entitled to one-third of the net proceeds.

On December 6, 2000, the Debtor filed for relief under Chapter 7. In Schedule A, he listed a one third interest in the Property. In Schedule C, the Debtor claimed an exemption in the Property in the sum of $120,000 pursuant to Mass. Gen. Laws ch. 188, § 1. In Schedule I, he listed two children, ages 13 and 14, as dependents.

On March 21, 2001, the Trustee filed his objection to the Debtor's claimed homestead ("Objection"). The Trustee asserted that Mrs. Roberts' declaration served to defeat the Debtor's prior declaration of homestead. Further, he claimed, that "[a] Homestead exemption can only be claimed by one who occupies the property as his principal residence." Therefore, argued the Trustee, the Debtor cannot rely on

---

1. The parties explain that this declaration was recorded to evidence Mrs. Roberts' disability which she had failed to disclose in a homestead declaration recorded on February 6, 1997. Evidence of this prior declaration was not presented to the Court.

either his or Mrs. Roberts' declaration of homestead in support of his claimed exemption.

In response, the Debtor argued there is no impediment to his relying upon his homestead declaration. Further, the Debtor argued that his homestead can co-exist with Mrs. Roberts' because § 1A of ch. 188 was intended to supplement not substitute a § 1 homestead. The Debtor also responded that a homestead under § 1 can be claimed by one who occupies or intends to occupy the property. Lastly, the Debtor asserted that because the earliest that the Property could be sold is eight years from the petition date, the value of the Debtor's one third interest is speculative and of inconsequential value.

I held a hearing on the matter. At the hearing, the Trustee presented the arguments set forth above. In addition to his aforementioned arguments, the Debtor stated that he now lives at the Property as an accommodation to Mrs. Roberts who is disabled. Also, the Debtor claimed that under the case of *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir.1999), *cert. denied, Patriot Portfolio, LLC v. Weinstein*, 527 U.S. 1036, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999), I should rule that Mrs. Roberts' homestead declaration supplements the Debtor's declaration, particularly since the parties were married when they filed their declarations. At the end of the hearing, I gave the parties the opportunity to file additional briefs and affidavits.

In his post-hearing memorandum, the Trustee first argued that the effect of the filing of the second homestead was to defeat the first citing to the last sentence of Mass. Gen. Laws ch. 188, § 2. Although the Trustee recognized that § 1A allows for more than one homeowner to file a § 1A homestead, he asserted that it does not permit the filing of both a § 1 and a § 1A homestead.

The second argument that the Trustee made is that the effect of the divorce judgment was to grant to Mrs. Roberts the title to the Property and the sole right to occupy the same. The Trustee's third argument was that the only interest that the Debtor has in the Property is an equitable one and that such an interest cannot be subject to a homestead declaration, citing to *Ass't Recorder of Bristol v. Spinelli*, 38 Mass.App.Ct. 655, 651 N.E.2d 411 (Mass. App.Ct.1995). In his concluding paragraph, the Trustee argued that the Debtor's declaration is "valid or invalid" and again explained that the Debtor was not living at the Property at the time he recorded the declaration.

The Debtor filed an affidavit in which he stated that he moved to the Property in February of 2000 due to his loss of job and Mrs. Roberts' inability to care for the two minor children without assistance. The Debtor also filed a post-hearing memorandum in which he first argued that his declaration is valid because he intended to live at the Property when he filed the declaration and now lives there. Further, the Trustee implicitly agreed that the declaration was valid when he argued that Mrs. Roberts' declaration served to defeat the Debtor's. Lastly, on this issue, the Debtor argued that the Trustee has not met his burden to show that the declaration was invalid.

The Debtor's second argument was that the last sentence of § 2 of ch. 188 does not defeat his homestead because Mrs. Roberts' declaration was not a new estate of homestead that covered him. Also, the Debtor asserted that the two estates of homestead can co-exist because Mrs. Roberts' homestead is merely a state sanctioned supplement to his. Further, argued the Debtor, even if his homestead is inval-

id, the protections afforded to Mrs. Roberts under her declaration must extend to the Debtor and the children.

The Debtor filed a final memorandum in response to the Trustee's post-hearing memorandum. First, the Debtor argued that the Trustee's interpretation of the last sentence of § 2 of ch. 188 was erroneous. The Debtor interpreted the sentence to apply only if the individual who obtained the first homestead acquires a new estate of homestead. Second, the Debtor claimed that because he resides at the Property and under the divorce decree he still has an ownership interest, his homestead is still valid. The Debtor again asserted that in the event that his homestead is declared invalid, the protections of Mrs. Roberts' homestead should be extended to him.

The Debtor then argued as follows:

Finally, the Trustee states that at the time he recorded his Homestead Declaration on January 17, 1997, the Debtor was not residing at the premises. The Trustee misses the point, however, that at the time of the recording of the Debtor's Homestead Declaration, the Debtor intended to occupy the premises, as no disposition as to the issue had been agreed upon or adjudicated. Therefore, the Debtor satisfactorily recorded his valid declaration of homestead. The Debtor states that the Legislature chose the words "occupies or intends to occupy" in a non-arbitrary fashion, which words are self-explanatory, and should be give literal interpretation. The objecting party must produce evidence to rebut the presumptively valid exemption whereupon the burden of production shifts to the Debtor to unequivocally demonstrate that the exemption is prop-

er. *In re Carter*, 182 F.3d 1027, 1029–30 n. 3 (9th Cir.1999). The Trustee has presented no evidence to the Court to suggest that the Debtor did not intend to occupy the premises when the Debtor recorded his Declaration of Homestead on January 17, 1997. Therefore, the Trustee has failed to meet his burden.

Debtor's Response to Memorandum in Support of Chapter 7 Trustee's Objection to Homestead Exemption, p. 5.

## III. *Analysis*

At the time he caused his declaration to be recorded,[2] Mass. Gen. Laws ch. 188, § 1 provided as follows:

An estate of homestead to the extent of one hundred thousand dollars in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. . . .

For the purposes of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

Mass. Gen. Laws ch. 188, § 10. *See also Dwyer v. Cempellin*, 424 Mass. 26, 28, 673 N.E.2d 863, 865 (1996).

---

**2.** "All existing estates of homestead which have been acquired under any law heretofore in force shall continue to be held and enjoyed notwithstanding the repeal of such law."

Subsection 1A provides, in part, as follows: [3]

> The real property or manufactured home of persons sixty-two years of age or older, regardless of marital status, or of a disabled person, as herein defined, shall be protected against attachment, seizure or execution of judgment to the extent of two hundred thousand dollars
>
> . . .
>
> Each individual having an ownership interest in the real property or manufactured home which serves as that individual's principal residence and who qualifies under the provisions of this section shall, upon filing of an elderly or disabled person's declaration of homestead protection, be eligible for protection of such ownership interest up to a maximum amount of two hundred thousand per individual, regardless of whether such declaration is filed individually or jointly with another. . . .
>
> The elderly or disabled person's estate or claim of homestead shall be terminated upon the sale or transfer of the real property or manufactured home during the declarant's lifetime or upon the sale or transfer of the declarant's interest in the real property or manufactured home during the declarant's lifetime or upon the death or the surviving declarant. . . .

Subsection 2, which provides for the means by which to obtain a homestead provides in the final sentence that "[t]he acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate."

Subsection 7 states, in part, as follows: An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods:—(1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.

■ The Supreme Judicial Court of Massachusetts has explained that the homestead exemption should be liberally construed in favor of the declarant. *See e.g. Shamban v. Masidlover,* 429 Mass. 50, 52, 705 N.E.2d 1136, 1138 (1999); *Dwyer v. Cempellin,* 424 Mass. 26, 30, 673 N.E.2d 863 (1996).

■ 11 U.S.C. § 522(1) provides, in part, that "[u]nless a party in interest objects, the property claimed as exempt on such list [the list of property that the debtor claims as exempt] is exempt." Fed. R. Bankr.P. 4003(c) provides that "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." "If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to dem-

---

**3.** In 2000, the amount of the homestead claims for subsections 1 and 1A were increased to $300,000, Section 3 of St.2000, ch. 174 provides:

> This act shall apply to declarations of homestead recorded or filed for registration pursuant to section 1 or 1A of chapter 188 of the General Laws before, on, or after the effective date of this act, but the increase in the amount of homestead protection for declarations recorded or filed for registration before the effective date of this act shall not have any priority over, and shall be subordinate to, any lien, rights or interest recorded or filed for registration before the effective date of this act.

onstrate that the exemption is proper.... the burden of persuasion, however, always remains with the objecting party." *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 (9th Cir.1999).

The Trustee's first objection, which he raised in his initial objection and in his memorandum, is that the Debtor's declaration is invalid because the Debtor did not have the requisite intent to occupy when he filed the declaration.[4] According to the exhibits which the Trustee attached to his objection and memorandum, the Trustee established that at the time the Debtor filed his declaration, the Debtor had not been living at the Property for at least 9 months. Further, he demonstrated that the divorce decree was not issued until 14 months after the Debtor filed his declaration. Based upon this unrebutted evidence, I conclude that the Trustee produced evidence to rebut the validity of the exemption. The burden then shifts to the Debtor to show the claim of his exemption is proper. In support of his exemption, the Debtor contends that he had the requisite intent to occupy because the probate court had not ruled on the issue of the division of the Property. The question becomes how would the Supreme Judicial Court of Massachusetts rule on the issue of what is sufficient to establish intent to occupy under Massachusetts law. *See In re Miller*, 113 B.R. 98, 101 (Bankr.D.Mass. 1990) ("Rather, [the bankruptcy court] should attempt to predict what the highest court would do and to that end should accord proper regard to decisions of other courts of the state.... so this Court's first duty is to determine how the Commonwealth of Massachusetts Supreme Judicial Court would rule.")

There are no Massachusetts cases which address this issue. After reviewing the homestead statutes nationally, 14 Robert Lefkowitz & Gabriel Minc, *Collier on Bankruptcy, Exemptions* (Lawrence P. King, 15th ed. Rev'd 2001), I could only find two other states which, by statute, allow a homestead exemption for a residence in which a debtor resides or intends to resides. See Idaho Code § 55–1001 ("'Homestead' means and consists of the dwelling house or the mobile home in which the owner resides or intends to reside ... "); Wash. Rev.Code Ann. § 6.13.010(1) ("the homestead consists of the dwelling house or the mobile home in which the owner resides or intends to reside ..."). A few states have case law exceptions to the statutes which require residency. *See e.g. In re Schissler*, 250 B.R. 697, 700 (Bankr.W.D.Mo.2000) ("However, occupancy is not an absolute prerequisite to a valid claim of a homestead exemption; alternatively, the debtor may establish a valid homestead exemption claim if there is 'a bona fide intention of making the premises a homestead or permanent residence of a family.'"); *Security State Bank of Scott City v. Coberly*, 5 Kan.App.2d 691, 623 P.2d 544, 545 (1981) ("However, Kansas courts have recognized a constructive occupancy exception and will extend the homestead exemption to certain properties even though they were not actually occupied at the time the judgment lien attached."); *Brodsky v. Maloney*, 78 S.D. 605, 609, 105 N.W.2d 911, 913 (1960) ("This court has consistently taken the view that a property may be impressed with the homestead character before the residence is completed and actually occupied by the family of the owner.").

---

4. I reject the Debtor's argument that when the Trustee argues that Mrs. Roberts' declaration invalidated that of the Debtor, the Trustee implicitly recognized that the Debtor's declaration was valid. I read the Trustee's argument to be one in the alternative.

Though the cases which address the definition of intent are few, they all require that the intent be linked to actual occupancy in the not too distant future. For example in *Farrington v. First National Bank of Bellville*, 753 S.W.2d 248 (Tex. App.1988), the court considered whether a transfer of real property was free and clear of a homestead claim. The court concluded that there was a factual question regarding intent which precluded entry of summary judgment. In discussing how to determine that intent the court stated:

> Generally, a 'homestead' is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith.... However, a homestead exemption may be established upon unoccupied land if the owner presently intends to occupy and use the premises in a reasonable and definite time in the future, and has made such preparations toward actual occupancy and use that 'are of such character and have proceeded to such an extent as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home.'

753 S.W.2d at 250 (citations omitted).

In *Coberly*, 5 Kan.App.2d at 692, 623 P.2d 544, the court concluded that "the elements critical to an extension of the constructive occupancy exception are a manifestation of the intent to occupy the land as a homestead and actual occupation within a reasonable time thereafter. The Coberlys' repeated efforts to move their home and the undisputed evidence of their preparation of the land for habitation established both their intent and the timeliness of their actual occupation." In *Traverso v. Cerini*, 146 Wash. 273, 263 P. 184 (1928), the Supreme Court of Washington addressed the sale of real estate by a judgment creditor who questioned the validity of the debtor's homestead. In discussing what constitutes intent to use property as a home, the court stated that

> it is possible that the claim should be recognized when the purchase is followed within a reasonable time with preparations for occupancy, and delayed no longer than is necessary to fit the property for residence purposes. But there must be in every such case a good-faith intent to occupy the premises as a homestead, and this intent must be shown by something more than by mere declarations.

146 Wash. at 275, 263 P. 184.

Other courts have held similarly. *See e.g. Kingman v. O'Callaghan*, 4 S.D. 628, 57 N.W. 912 (1894) ("which intention is followed by such occupancy as soon thereafter as the house, under the circumstances, can be completed, ... the requirements of our statute have been answered."); *In re Dennison*, 129 B.R. 609, 611 (Bankr.E.D.Mo.1991) ("An intent to occupy the premises must be exhibited by both a declaration of such intent and overt acts in support of such intention.... Regarding the debtor's control over the time of occupation, the debtor must prove that such occupation is either imminent or reasonably close in time and is neither indefinite nor incapable of measurement.").

■ Because these cases present a uniform and reasonable test to determine a declarant's intent, I predict that the Supreme Judicial Court would adopt this test. Therefore, I conclude that in order to establish the requisite intent, a debtor must demonstrate that the future occupancy is in the near future and is capable of measurement given whatever steps a debtor must take to achieve occupancy. A declaration of interest alone is insufficient.

■ In the present case, the Debtor offered as evidence of his intent to occupy his statement that he intended to occupy the Property because the matter of the couple's property division had not yet been decided. The Debtor had not lived at the Property for at least 9 months prior to filing his declaration and the disposition of the Property was not decided until 14 months after the filing. There is nothing in the Debtor's statement that indicates that at the time he filed his declaration his occupancy was in the near future or that he was capable of effectuating this statement. Instead of helping his own case, the Debtor's statement bolstered the Trustee's argument.

I conclude that the Debtor failed to produce evidence to establish his intent to occupy. I further conclude that, under Massachusetts law, the Debtor has failed to demonstrate that he was entitled to an estate of homestead because he neither occupied nor intended to occupy the Premises at the time he filed the declaration.

■ Having concluded that his declaration was invalid, I must next turn to the Debtor's argument that Mrs. Roberts' declaration of homestead under § 1A of ch. 188 should protect the Debtor. Subsection 1A was enacted in 1987, subsequent to the enactment of subsections 1 and 2. The language in this subsection is significantly different from the provisions of subsection 1. Subsection 1A provides homestead protection for a disabled or handicapped individual. This subsection makes no reference to this estate of homestead benefitting the family. Therefore, an estate of homestead under subsection 1A is manifestly different from the estate which one could claim under subsection 1.

In the case of *In re Sebio*, 237 B.R. 1, 3 (Bankr.D.Mass.1999) and *In re Ballirano*, 233 B.R. 11, 14 (Bankr.D.Mass.1999), I held that a declaration filed under subsection 1 protects even the non-filing debtor because of the language found therein describing the exemption as benefitting the family. Because § 1A does not have the same language, the converse cannot be true. *Shamban v. Masidlover*, 429 Mass. 50, 705 N.E.2d 1136 (1999) (declining to so liberally construe § 1A so as to ignore explicit filing requirements). The estate which Mrs. Roberts claimed under § 1A serves to benefit only herself and cannot, based upon the plain language of the statute, provide coverage to any other individual.

■ The Debtor's final applicable argument is that the Trustee's objection should be overruled because the Debtor's interest in the Property is speculative because it will not be available for distribution for several years. The Debtor's dependents are now 14 and 15. Their emancipation will occur in approximately four years at which time the Property must be sold and the Debtor given his share of the proceeds. The Debtor has provided no support for this argument. Furthermore, ignoring an asset of the estate would be in derogation of the Trustee's duties as set forth in 11 U.S.C. § 704. Moreover, there are means of administering an asset that will not benefit the estate until some future event. *See e.g. In re Hart*, 76 B.R. 774 (Bankr. C.D.Cal.1987). Accordingly, the Court finds that this argument lacks merit.

III. *Conclusion*

For the foregoing reasons, the Court concludes that the Trustee has met his burden. I will enter a separate order sustaining the objection.