**In re David F. HESS and Lidia I. Hess, Debtors.**

**Bankruptcy No. 03–42365.**

United States Bankruptcy Court, D. Idaho.

Oct. 21, 2005.

---

**9.** The Court arrived at this figure as follows: (7.8 hours × $150/hour × 1.5 = $1,755) + (3.0 hours × $150 = $450) = $2,205.

Jay A. Kohler, Idaho Falls, ID, Attorney for Debtors.

Jim Spinner, Service Spinner & Gray, Pocatello, ID, for Trustee.

L.D. Fitzgerald, Pocatello, ID, Chapter 7 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Background

Chapter 13 Debtors David and Lidia Hess claim an exemption under Idaho Code § 11–604(1)(c)[1] in the $7,500 settlement proceeds they received from a medical malpractice claim. Scheds. B, C, Docket No. 1. Debtors' confirmed Chapter 13 plan provides that such proceeds will be distributed to their creditors unless the funds are deemed exempt and not disposable income. Order Confirming Plan at 2, Docket No. 31. The Chapter 13 Trustee, L.D. Fitzgerald, objects to Debtors' claim of exemption arguing that the money is not reasonably necessary for Debtors' support.

---

1. The statute allows an exemption in "proceeds of insurance, a judgment or a settlement, or other rights accruing as a result of bodily injury of the individual ..." to the extent the money is "reasonably necessary for the support of [the individual] and his dependents." Idaho Code § 11–604(1)(c).

884

He contends the money constitutes disposable income that should go to creditors. Obj., Docket No. 65.[2] The Court conducted an evidentiary hearing concerning this matter on August 24, 2005, and took the matter under advisement. Docket No. 73. This Memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052; 9014.

### Facts

In November 2003, Debtor David Hess[3] was a security officer working at the Idaho National Engineering and Energy Lab. According to Schedule J, Mr. Hess earned $1,887 in net wages each month. Mrs. Hess received $1,300 from the State of Idaho for caring for her disabled adult son. The couple has one other child, Mrs. Hess's daughter, who was sixteen at the time of filing. Debtors budget a modest and unremarkable amount of monthly expenses for a family of four. At the time the bankruptcy case was commenced, Mr. Hess was paying $250 per month in child support, however, that payment was anticipated to end in 2004. Based on these projections, Debtors had $510 in disposable income.

Since filing their original schedules in 2003, Debtors have suffered financial hardships and incurred additional expenses. Their income has declined because approximately nine months ago, Mr. Hess's employer demoted him.[4] Mrs. Hess's income has remained about the same.

As for their expenses, while Mr. Hess no longer pays child support, most of Debtors' other monthly expenses have increased, and they have new, additional bills. They owe $1,558 in federal income taxes and $683 in state income taxes for 2004. The Internal Revenue Service is garnishing Mr. Hess's wages in the amount of $50 per month under a repayment agreement. Debtors incurred unexpected medical expenses, including hospitalization for Mrs. Hess, resulting in $1,500 in bills not covered by insurance. They are paying these costs monthly at the rate of $150. Debtors' automobiles required new tires, for which they owe Les Schwab $1,200 and are making monthly payments of $75.

Debtors' daughter is now eighteen but remains at home because she anticipates attending the local college, causing an increase in Debtors' car insurance bill to $318 per month. Debtors' transportation costs have increased, primarily because of the increase in gasoline prices. And Debtors' home is in a poor state of repair. A concrete driveway needs resurfacing so their son can safely walk outside; they need to replace broken windows; and corroded plumbing pipes are causing rust in their drinking water.

2. Although not filed until June 28, 2005, some eighteen months after Debtors' § 341(a) meeting, Trustee's objection is not time-barred by Fed. R. Bankr.P. 4003(b), which requires that an objection to an exemption be filed within "30 days after the meeting of creditors … or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Here, because Debtors amended Schedule C on June 15, 2005, Docket No. 63, Trustee's objection is timely.

3. Debtor Lidia Estacio had filed her own bankruptcy petition under Chapter 7 of the Code on May 3, 2002. It was converted to a Chapter 13 case on December 17, 2003.

Docket Nos. 1, 16, Bankr.Case No. 02–40818. At some time between the two bankruptcy filings, David and Lidia married. On January 30, 2004, the Court granted David's request to consolidate his Chapter 13 case with that of Lidia's. Docket Nos. 14, 21.

4. Mr. Hess did not substantiate just how much his income declined as a result of this demotion. He testified that he earns about $20,000 less per year, resulting in a weekly loss of $150 or $200, but he did not produce any past or current pay statements. However, there was no evidence offered to show Mr. Hess's estimates were incorrect.

Finally, the State recently conducted an annual inspection of their home to ensure it was safe and adequate for their disabled son. Debtors were informed that their son's basement bedroom needs a window of sufficient size to egress in case of an emergency. Debtors anticipate it will cost $1,600 to enlarge the opening and replace the window. If they fail to do so, Mrs. Hess will not be allowed to continue caring for her son and will lose the income she receives for that purpose.

Debtors claim the entire $7,500 in settlement proceeds as exempt. Docket No. 63.

## Disposition

### A. Exemption Standards.

 As discussed above, under Debtors' confirmed Chapter 13 plan, all proceeds recovered from the malpractice settlement must be distributed to creditors unless they are deemed exempt and not disposable income. In Idaho, citizens are restricted to the exemptions allowed under state law. 11 U.S.C. § 522(b)(1); Idaho Code § 11–609. Idaho Code § 11–604(1)(c) grants debtors an exemption in "proceeds of insurance, a judgment, or a settlement, or other rights accruing as a result of bodily injury of the individual" to the extent that the money is "reasonably necessary" for the support of a debtor and his dependant. As the objecting party, Trustee bears the burden of proof to show the exemption is not proper. Fed. R. Bankr.P. 4003(c). However, once Trustee presents "sufficient evidence to rebut the prima facie validity of the exemption, the burden shifts to a debtor to demonstrate that the exemption is proper." *In re Nielsen*, 97.4 I.B.C.R. 107, 107 (Bankr.D.Idaho 1997).[5] It is well established that "the nature and extent of exemptions is determined as of the date that the bankruptcy petition is filed," *In re Moore*, 269 B.R. 864, 868 (Bankr.D.Idaho 2001), and that exemption statutes are liberally construed in favor of the debtor, *In re Steinmetz*, 01.1 I.B.C.R. 28, 28 (Bankr.D.Idaho 2001).

By introducing evidence of Debtors' income and budget at the time of filing the petition, establishing that Debtors' monthly expenses decreased with the elimination of the child support payments, and that they were currently able to meet their monthly bills, Trustee adequately rebutted the prima facie validity of Debtors' exemption claim. Therefore, Debtors must show by a preponderance of the evidence that the settlement proceeds are reasonably necessary for their family's support.

### B. Debtors Have Shown That the Settlement Money is Reasonably Necessary.

 Idaho Code § 11–604(2) defines what is reasonably necessary for a debtor's support as that amount "required to meet the present and anticipated needs of the [debtor] and his dependents, as determined by the court after consideration of the [debtor]'s responsibilities and all the present and anticipated property and income of the [debtor], including that which is exempt." The Court recently held that when referring to a debtor's "present and anticipated needs," the Court must look at what those needs were as of the date Debtors filed for bankruptcy. *In re Lopez*, Case No. 03–40205, 2005 WL 4705289, *4 (Bankr.D.Idaho Sept. 19, 2005). Debtors' "anticipated needs" include those that were reasonably foreseeable at that time. *See In re Lopez*, 2005 WL 4705289 at *5 (discussing the expenses related to the debtor's medical condition that they were aware of at the time they filed for bank-

**5.** Trustee is incorrect when he argues that debtors carry the initial burden to show that an exemption is proper. It is only after the objecting party has presented sufficient proof that the burden shifts to the debtor to explain why the exemption is properly claimed.

886

ruptcy). The same analysis applies in examining Debtors' present and anticipated income.

 At the time Debtors filed their bankruptcy petition two years ago, Mr. Hess earned almost $1,900 per month, while his wife received $1,300 in nontaxable income. Debtors could not reasonably anticipate their income would decline in any dramatic fashion. Debtors were aware that Mr. Hess's obligation to pay support would terminate, which would free up $250 per month. They also knew their daughter would turn eighteen, and could either leave the house to attend college or, if she chose to stay home, be expected to contribute some income toward the monthly expenses.

But despite the optimistic income projections, Debtors' original monthly budget left little room for any significant increase in expenses. This was unfortunate. A family budget by its nature must be fluid, not static, and a realistic budget must accommodate a family's evolving and reasonably anticipated needs. Many of Debtors' original projected monthly expenses are conspicuously inadequate to account for the inevitable yearly cost of living increases.

The most glaring shortfall is Debtors' commitment of only $50 monthly to home maintenance. In light of their home's condition, that amount was unrealistic. Surely, Debtors were aware they would need to make significant home repairs over time. Debtors could have foreseen the need to increase the size of their son's bedroom window as he matured so he could use it, if necessary, for an escape route as required by the State. The driveway surface has been deteriorating to the extent their son can no longer safely navigate it. And Debtors should have known their old plumbing would have to be updated. All these types of major repairs were reasonably foreseeable by Debtors at the time of filing, and not accounted for in their budget projections.

Realistically, Debtors' only current hope of meeting their financial needs is by access to the settlement money.

## Conclusion

Under these facts and the standard established in the exemption statute, the Court concludes that the malpractice settlement proceeds are reasonably necessary to meet Debtors' present and anticipated needs when viewed at the time of filing. Trustee's objection to Debtors' claim of exemption will be denied by separate order.