NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.  ID-11-1592-JuMkH |
| | ) | |
| DAVID B. RAMSEY and DONNA R. RAMSEY, | ) | Bk. No.  11-00977-TLM |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| JEREMY J. GUGINO, Chapter 7 Trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M[*] |
| | ) | |
| DAVID B. RAMSEY; DONNA R. RAMSEY, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on June 14, 2012
at Boise, Idaho

Filed - August 3, 2012

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Terry L. Myers, Bankruptcy Judge, Presiding

_____

Appearances:     Matthew Todd Christensen, Esq. of Angstman,
                 Johnson & Associates, PLLC argued for appellant,
                 Jeremy J. Gugino, Chapter & Trustee; Howard R.
                 Foley, Esq. of Foley Freeman, PLLC argued for
                 appellees, David and Donna Ramsey.

_____

Before:  JURY, MARKELL AND HOLLOWELL, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 7[1] trustee, Jeremy J. Gugino, appeals the bankruptcy court's order overruling his objection to the homestead exemption claimed by debtors, David and Donna Ramsey, in unimproved real property.

The trustee's objection raised the question whether debtors had the "actual intent" to make the unimproved real property their "homestead" within the meaning of Idaho Code § 55-1001(2). After an evidentiary hearing, the bankruptcy court ruled in favor of debtors and allowed their homestead.  We AFFIRM.

## I. FACTS

On April 7, 2011, debtors filed their chapter 7 petition. Gugino was appointed the trustee.

In Schedule A, debtors listed real property located on Palmetto Drive in Eagle, Idaho (the "Palmetto Property") with a current value of $250,000 and encumbered by secured claims in the total amount of $394,184.63.  They also listed an unimproved five acre lot located forty-five miles from Boise, Idaho (the "Elk Meadows Property") with a value of $37,000 and unencumbered.  In Schedule C, debtors claimed the Elk Meadows Property exempt as their homestead under Idaho Code §§ 55-1001, 55-1102, and 55-1103.[2]  Debtors' Statement of Intention showed

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] These statutes authorize married debtors to claim a $100,000 homestead exemption in unimproved land as long as they intend to place a house on the property and make it their principal residence.

that they would surrender the Palmetto Property.

**The Trustee's Objection To Debtors' Homestead Exemption**

On May 7, 2011, the trustee objected to debtors' exemption on the grounds that they could not meet the "actual intent" requirement to make the Elk Meadows Property their "homestead" under Idaho Code § 55-1001(2). The objection was based on debtors' testimony at the § 341 meeting of creditors.[3] Debtors testified that they planned on residing in the Palmetto Property until it went into foreclosure and then rent a residence in Boise until they could start building a house on the Elk Meadows Property. The trustee argued that debtors' ability to build the house was predicated on them finding work and receiving financing to actually build the house. These plans, the trustee asserted, were "too speculative" to demonstrate "actual intent". Finally, the trustee pointed out that debtors had been trying to sell the Elk Meadows Property off and on since 2009, which was inconsistent with their professed intent to build a house and make it their principal residence.

**The Evidentiary Hearing**

After further briefing from the parties, the bankruptcy court held an evidentiary hearing on September 26, 2011, at which debtors and their real estate agent, Vern Mathie, testified.

Debtors' testimony can be summarized as follows:

In 2002, debtors purchased the Palmetto Property and had

---

[3] The transcript of the § 341 meeting is not part of the record on appeal.

-3-

been living in the house continuously ever since. In December 2005, debtors purchased the Elk Meadows Property. At that time, debtors were gainfully employed and their plan was to pay off the mortgages on both properties and then build a vacation home on the Elk Meadows Property.

The Elk Meadows Property had utilities (electric and telephone), road access, and was subject to CC&R's. At some point, debtors began the process of having a builder draw up house plans. They also requested a variance from the Elk Meadows CC&R's to set the house closer to the road, which was granted in 2006.

In 2009, debtors' income became unstable and the Palmetto Property required substantial repairs. As a result, debtors listed the Elk Meadows Property for sale with two different real estate agents in 2009 and 2010.

In 2010 debtors lost their jobs. Thereafter, they collected unemployment and struggled to make the mortgage payments on the Palmetto Property which totaled $3100 per month. They drew down on IRA and pension money to make their payments.

In January 2011, debtors obtained the house plans for the Elk Meadows Property, which were admitted into evidence. Debtors estimated that it would cost between $165,000 and $175,000 to build the house.

On March 15, 2011, debtors requested their real estate agent, Vern Mathis, to add to the MLS listing that debtors would be willing to carry a note on the Elk Meadows Property.

In early to mid-March 2011, debtors decided to allow the Palmetto Property to go into foreclosure. At that same time,

-4-

they also decided to declare the Elk Meadows Property as their permanent residence. As a result, they recorded a declaration abandoning their automatic homestead in the Palmetto Property on March 21, 2011. On the same day, they recorded a declaration of homestead and non-abandonment with respect to the Elk Meadows Property. A few weeks later, debtors filed their chapter 7 petition. At the time of their filing, Debtors did not have financing lined up to build the house on the Elk Meadows Property nor did they have specific plans for when they would start construction.

Debtors also testified that when the Palmetto Property was foreclosed upon, they would live and work in Boise. Boise is approximately forty-five miles from the Elk Meadows Property.

Mr. Mathis then testified. He stated that the Elk Meadows Property had no improvements and that no construction of any kind had taken place on the property. He further testified that on March 15, 2011, debtors had asked him to make changes to the MLS listing to carry back a note on the property to facilitate a sale. According to Mr. Mathis, three days later, on March 18, 2011, debtors cancelled the listing. Finally, Mr. Mathis opined that construction loans were very difficult to arrange.

At the end of the hearing, debtors' counsel stipulated with the trustee that he met with debtors on March 17, 2011.

In closing argument, the trustee urged the bankruptcy court to adopt objective factors for determining what constitutes "actual intent" under Idaho exemption law with respect to unimproved property. Those factors, the trustee argued, should require a debtor to show that he or she has concrete plans to

-5-

construct and occupy a house on the unimproved property as well as the financial means to do so.  The bankruptcy court took the matter under advisement.

## The Bankruptcy Court's Ruling

On October 4, 2011, the court issued its findings of fact and conclusions of law in an oral decision.  In making its decision, the bankruptcy court set forth the following general standards applicable to deciding the issue of intent: (1) Idaho's exemption laws are to be construed liberally in favor of debtors; (2) the trustee, as the party objecting to debtors' exemption, had the burden of proof and the ultimate burden of persuasion; (3) exemptions are determined as of the bankruptcy filing date; and (4) the question of debtors' intent is a factual one that can be proven by direct or circumstantial evidence.  With respect to this later point, the bankruptcy court recited the evidence it considered in making its decision.

For the trustee:

(1) debtors listed the Elk Meadows Property for sale multiple times and even eventually as recently as March 2011, one month before they filed their petition;

(2) debtors continued to reside in the Palmetto Property and expressed an intention to stay there until foreclosure;

(3) debtors never commenced construction of a home on the Elk Meadows Property despite the length of their ownership;

(4) debtors did not have the financial ability to build a home;

(5) assuming debtors would secure jobs in Boise, debtors would double their commute time by living on the Elk Meadows Property; and

(6) debtors cancelled the listing on the Elk Meadows

-6-

Property and filed their homestead declaration just days after meeting with their bankruptcy attorney.

For the debtors:

(1) debtors professed their intent to reside on the Elk Meadows Property in the future through the filing of their declaration of homestead;

(2) debtors offered the January 2011 house plans into evidence as well as the variance they secured for the property;

(3) debtors' testimony indicated that at the time they filed their petition, they knew they would not be able to stay permanently in the Palmetto Property and that they intended to eventually build a home on the Elk Meadows Property.

The court gave weight to the fact that debtors' Statement of Intention filed with their petition corroborated their testimony to surrender the Palmetto Property. In addition, the bankruptcy court found that debtors' decision to abandon the Palmetto Property as their homestead and establish the Elk Meadows Property as their homestead was due to their changing circumstances, which culminated in discussions with their bankruptcy attorney. The court decided that those discussions, which occurred on the eve bankruptcy, were not sufficient grounds to impeach debtors' testimony. In the end, the court found debtors' testimony credible.

Having received and evaluated the weight and credibility of all the evidence offered by the parties, the bankruptcy court found that the trustee had not met his burden of proof of showing, by a preponderance of the evidence, that debtors lacked the intent to make the Elk Meadows Property their homestead as required under Idaho exemption law.

On the same day it issued its oral ruling, the bankruptcy

court entered the order overruling the trustee's objection. The trustee timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in allowing debtors' homestead exemption in the unimproved Elk Meadows Property.

## IV. STANDARDS OF REVIEW

We review questions of fact, such as the bankruptcy court's ultimate decision regarding debtors' intent to make the Elk Meadows Property their homestead, under the clearly erroneous standard. Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003). "A [factual] finding is clearly erroneous when there is no evidence in the record supportive of it and also, when, even though there is some evidence to support the finding, the reviewing court, on review of the record, is left with a definite and firm conviction that a mistake has been made in the finding." United States v. Gypsum Co., 333 U.S. 364, 395 (1948). We affirm the bankruptcy court's factual findings unless its interpretation of the facts was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc).

We review a bankruptcy court's conclusions of law, including its interpretation of state law, de novo. Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP

-8-

2009).

# V. DISCUSSION

When debtors filed their chapter 7 petition, all of their assets became "property of their bankruptcy estate under § 541, subject to their right to reclaim certain property as exempt." Schwab v. Reilly, __ U.S. __, 130 S.Ct. 2652, 2656-58 (2010). "Property a debtor claims as exempt will be excluded from the bankruptcy estate '[u]nless a party in interest' objects." Id. (citing § 522(l)). Whether property qualifies as exempt is to be determined as of the date of the filing of debtors' chapter 7 petition. White v. Stump, 266 U.S. 310, 313 (1924); In re Cerchione, 414 B.R. at 548.

Section 522(b) allows debtors to choose the exemptions afforded by state law or the federal exemptions listed under § 522(d). Idaho has elected to "opt out" of the federal exemptions. Idaho Code § 11-609. Therefore, debtors were limited to the exemptions allowed under Idaho state law. In re Steinmetz, 261 B.R. 32, 33 (Bankr. D. Idaho 2001). Idaho exemption statutes are to be liberally construed in favor of the debtor. Id.

In Idaho, the homestead can be established automatically by occupying a home as one's principal residence or by recording a proper declaration of homestead. Idaho Code § 55-1004. To claim a homestead exemption in bare land or improved property which he or she does not yet occupy, the debtor must record a proper declaration. Idaho Code § 55-1004(2). In the case of a debtor who owns more than one parcel of property and who desires to claim a homestead exemption in a parcel he or she does not

-9-

yet occupy, the debtor must execute and record two different declarations: a declaration of homestead as to the unoccupied property, and a declaration of abandonment as to the occupied property.

The trustee does not dispute that debtors complied with the technical requirements for declaring a homestead with respect to the Elk Meadows Property and abandoning their automatic homestead in the Palmetto Property. Rather, the trustee asserts that to prove they "actually intended" to make the Elk Meadows Property their homestead within the meaning of Idaho Code § 55-1001(2), debtors need more than a mere declaration of homestead.

Idaho Code § 55-1001(2) states:

> "Homestead" means and consists of the dwelling house or the mobile home in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved; <u>or unimproved land owned with the intention of placing a house or mobile home thereon and residing thereon</u> . . . . Property included in the homestead must be <u>actually intended</u> or used as a principal home for the owner.

According to the trustee, proof of "actual intent" under the statute should require evidence of objective criteria such as a debtor's concrete plans to build a house on the bare land within a reasonable amount of time and the financial ability to do so. However, the plain language of the "homestead" definition does not include conditions regarding timing, financial ability, or otherwise. <u>In re Conley</u>, 1999 WL 33490228, at *12 (Bankr. D. Idaho 2001) ("The statute requires only that, in addition to an intent to reside, the debtor own or be purchasing the property and, thus, have a present interest in such property."). Although the Idaho Supreme Court has not provided guidance on

-10-

the intent requirement, numerous decisions by bankruptcy courts and this Panel fill that gap.

Generally, determining a debtor's intent to establish a homestead on property is a factually intensive endeavor.  See In re Kelley, 300 B.R. at 16; In re Moore, 269 B.R. 864, 868 (Bankr. D. Idaho 2001); In re Conley, 1999 WL 33490228, at *12 (Bankr. D. Idaho 2001) (finding that the debtor's decade long litigation concerning the unimproved property was indicative of his subjective intent to make the property his homestead).  As the trier of fact, the bankruptcy court had to determine which witnesses it found credible, which of the permissible competing inferences it would draw, and ultimately whether the party with the burden of persuasion — here the trustee — had persuaded it that the requisite facts showing intent or lack thereof were proven.

We have no doubt that the bankruptcy court performed this function properly.  The bankruptcy court summarized the evidence in support of the trustee's position and debtors' countervailing evidence that it considered.  The court explicitly credited debtors' testimony and permissibly drew inferences from their testimony and documentary evidence (house plans, the variance from the CC&R's, and their Statement of Intention).  "When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to [those] findings."  Wolfe v. Jacobsen (In re Jacobsen), 676 F.3d 1193, 1201 (9th Cir. 2012).

Despite the factual questions raised by the trustee as to whether debtors could reasonably expect to occupy the Elk

-11-

Meadows Property, we conclude that the bankruptcy court did not clearly err in finding that debtors' had the actual intent to make the Elk Meadows Property their homestead. The record as a whole, particularly in light of the credibility finding, supports the bankruptcy court's inferences and findings. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.A., 470 U.S. 564, 574-75 (1985).

In light of our conclusion, it is unnecessary for us to conduct an exhaustive review of non-binding case law interpreting other state's homestead exemption laws. Suffice it to say that we are not persuaded by the bankruptcy court's reasoning in In re Roberts, 280 B.R. 540 (Bankr. D. Mass. 2001). Extrapolating from case law that recognizes the constructive occupancy exception, the Roberts court held that "to establish the requisite intent, a debtor must demonstrate that the future occupancy is in the near future and is capable of measurement given whatever steps a debtor must take to achieve occupancy. A declaration of interest alone is insufficient." Id. at 546.

In those jurisdictions that recognize constructive occupancy, the underlying homestead statute has been construed to require actual occupancy. As a result, to avoid harsh results, the courts have fashioned a narrow exception that requires a manifestation of the intent to occupy the land as a homestead, and actual occupation within a reasonable time thereafter. In re Roberts, 280 B.R. at 545 (citing In re Schissler, 250 B.R. 697, 700 (Bankr. W. D. Mo. 2000)); Sec.

-12-

State Bank of Scott City v. Coberly, 623 P.2d 544, 545 (Kan. Ct. App. 1981); and Brodsky v. Maloney, 105 N.W.2d 911, 913 (S.D. 1960). The constructive occupancy exception and its requirement of actual occupation within a reasonable time make sense in the context of those cases. However, under Idaho law, physical presence on undeveloped land is immaterial to a homestead by declaration under Idaho Code § 55-1004(2). In re Conley, 1999 WL 33490228, at *11.

## VI. CONCLUSION

Having found no error of fact or law, we AFFIRM.